UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED IN CLERKS OFFICE
2009 JAN -9 P 12: 37
U.S. DISTRICT COURT
DISTRICT OF MASS.

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

    Plaintiff,

v.

PEABODY CONSTRUCTION CO., INC.,
PEABODY HOLDING BUSINESS TRUST,
BEAVER BUILDERS, LLC *nka* PEABODY
BUILDERS, LLC, 536 GRANITE STREET, LLC
and EDWARD A. FISH, JR.,

    Defendants.

CIVIL ACTION NO:

## COMPLAINT

Plaintiff Travelers Casualty and Surety Company of America, as and for its Complaint against Peabody Construction Co., Inc., Peabody Holding Business Trust, Beaver Builders, LLC *nka* Peabody Builders, LLC, 536 Granite Street, LLC and Edward A. Fish, Jr., states as follows:

### PARTIES

1. Travelers Casualty and Surety Company of America ("Travelers") is a Connecticut corporation authorized to do business and issue surety bonds in Massachusetts, with a place of business in Braintree, Massachusetts.

2. At all times relevant herein, Peabody Construction Co., Inc. ("Peabody") was a Massachusetts corporation, with a principal place of business located in Braintree, Massachusetts.

3. At all times relevant herein, Peabody Holding Business Trust was a Massachusetts trust, with a principal place of business located in Braintree, Massachusetts.

4. At all times relevant herein, Beaver Builders, LLC, now known as Peabody Builders, LLC ("Beaver"), was a Massachusetts limited liability company, with a principal place of business located in Braintree, Massachusetts.

5. At all times relevant herein, 536 Granite Street, LLC was a Massachusetts limited liability company, with a principal places of business located in Braintree, Massachusetts.

6. Edward A. Fish, Jr. ("Fish") is an individual residing at 90 Meadowbrook Road, Weston, Massachusetts.

## JURISDICTION

7. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §1332 as Plaintiff has citizenship diverse from the Defendants, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

## FACTS

8. At all times relevant herein, Travelers was in the business of, among other things, issuing performance and payment surety bonds to contractors to secure their performance on various construction projects.

9. At all times relevant herein, Peabody was in the business of construction contracting.

10. At all times relevant herein, Beaver was in the business of construction contracting.

11. On or about November 9, 2001, Peabody Construction Co., Inc., Peabody Holding Business Trust, Beaver Builders, LLC, 536 Granite Street, LLC and Edward A. Fish, Jr. (collectively, the "Defendants" or "Indemnitors") executed a General Agreement of Indemnity (the "Indemnity Agreement") for the purpose of indemnifying Travelers. A true and correct

copy of the Indemnity Agreement is attached hereto as Exhibit A and incorporated herein by reference.

12. The Indemnity Agreement provides that the Indemnitors:

> ... shall exonerate, indemnify and save [Travelers] harmless from and against every claim, loss, damage, demand, liability, cost, charge, suit, judgment, attorney's fee, and expense which [Travelers] incurs in consequence of having executed, or procured the execution of [surety bonds]. Expense includes the cost of procuring or attempting to procure release from liability, or in bringing suit to enforce this Agreement against any Indemnitor.

(Indemnity Agreement, Paragraph 3).

13. The Indemnity Agreement also states that:

> [Travelers] shall have the right, in its sole discretion, to determine for itself and the Indemnitor whether any claim or suit brought against [Travelers] or the Indemnitor upon any such Bond shall be paid, compromised, settled, defended or appealed, and its decision shall be binding and conclusive upon the Indemnitor. An itemized statement thereof sworn to by an employee of [Travelers] or a copy of the voucher of payment shall be prima facie evidence of the propriety and existence of Indemnitor's liability. [Travelers] shall be entitled to reimbursement for any and all payments made by it under the belief it was necessary or expedient to make such payments.

(Indemnity Agreement, Paragraph 4).

14. The Indemnity Agreement further provides:

> Indemnitor agrees to pay [Travelers], upon demand, an amount sufficient to discharge any claim or demand made against [Travelers] on any Bond. Indemnitor further agrees to pay [Travelers], upon demand, an amount equal to the value of improperly diverted Indemnitor assets or Contract Funds. These sums may be used by [Travelers] to pay such claim or be held by [Travelers] as collateral security against any loss, claim, liability or unpaid premium on any Bond ...

(Indemnity Agreement, Paragraph 5).

15. The obligations of each Indemnitor under the Indemnity Agreement are joint and several.

16. On or about April 14, 2005, the Indemnitors executed a Loss Agreement for the benefit of Travelers. A true and correct copy of the Loss Agreement is attached hereto as Exhibit B and incorporated herein by reference.

17. Through the Loss Agreement, the Indemnitors reaffirmed their joint and several obligations and liabilities to Travelers as set forth in the Indemnity Agreement.

18. Pursuant to the Loss Agreement, interest on any payments made by Travelers on behalf of the Indemnitors shall accrue at the rate of six percent (6%) per annum.

19. Pursuant to the Loss Agreement, the Indemnitors executed a Promissory Note in favor of Travelers (the "Promissory Note"). A true and correct copy of the Promissory Note is attached hereto as Exhibit C and incorporated herein by reference.

20. The Promissory Note provides that the Indemnitors promise to pay Travelers, on demand, $8,171,658.00, together with six percent (6%) interest and costs of collection, including reasonable attorneys' fees.

21. The Promissory Note further provides that the amount owed to Travelers shall be adjusted from time to time to directly correlate to Travelers' loss.

22. The Promissory Note further provides that the Indemnitors irrevocably waive all right to a trial by jury in any proceeding, action, claim, defense or counterclaim by or against the Indemnitors arising out of, or in connection with, the Promissory Note, or by reason of any other cause or dispute by and between the Indemnitors and Travelers.

23. As a direct and proximate result of the Indemnitors executing the Indemnity Agreement, and in reliance thereon, Travelers, as surety, issued performance and payment bonds

-5-

(the "Bonds") on behalf of Peabody and Beaver, as principals. A list of the Bonds issued by Travelers is attached hereto as Exhibit D.

24. Travelers ultimately received hundreds of claims on the Bonds and demands for payment and performance from various obligees, subcontractors and/or suppliers to Peabody and Beaver.

25. Travelers conducted independent investigations of each claim and exercised its obligations under the Bonds in good faith.

26. As a direct and proximate result of Travelers' execution of the Bonds and satisfaction of the aforementioned claims, Travelers has incurred losses and associated expenses (hereinafter referred to collectively as "losses") to date in excess of $24,000,000.00.

27. As a direct and proximate result of Travelers' execution of the Bonds and satisfaction of the aforementioned claims, Travelers anticipates incurring further losses, including those incurred in connection with this litigation.

28. The Indemnitors are obligated to indemnify Travelers in connection with all losses incurred.

29. In accordance with its rights under the Indemnity Agreement, Travelers has made demand upon the Indemnitors to hold Travelers harmless from all losses incurred.

30. The Indemnitors have failed and/or refused to indemnify Travelers.

31. Travelers has complied with all conditions precedent to commencing this action.

## COUNT I

### (Indemnity)

32. Travelers repeats and incorporates herein by reference the allegations contained in Paragraphs 1 through 31, as if set forth at length here.

33. As a direct and proximate result of Travelers' execution of the Bonds on behalf of Peabody and Beaver, and at the request of the Indemnitors, Travelers has incurred significant losses, and anticipates sustaining further losses in the investigation, defense and/or payment of claims on the Bonds, and in enforcing its right to indemnity.

34. The Indemnitors are liable to Travelers for all losses incurred in relation to claims made on the Bonds, in addition to the costs and attorneys' fees incurred in prosecuting this claim, all in accordance with the specific terms and conditions of the Indemnity Agreement.

## COUNT II

### (Common Law Indemnity)

35. Travelers repeats and incorporates herein by reference the allegations contained in Paragraphs 1 through 34, as if set forth at length here.

36. As a direct and proximate result of Travelers' execution of the Bonds on behalf of Peabody and Beaver, and at the request of the Indemnitors, Travelers has incurred significant losses, and anticipates sustaining further losses in the investigation, defense and/or payment of claims on the Bonds, and in enforcing its right to indemnity.

37. Pursuant to Travelers' common law right of indemnity, the Indemnitors are liable to Travelers for all losses incurred in relation to claims made on the Bonds.

## COUNT III

### (Breach of Contract)

38. Travelers repeats and incorporates herein by reference the allegations contained in Paragraphs 1 through 37, as if set forth at length here.

39. Pursuant to the Indemnity Agreement, the Indemnitors are required to exonerate, indemnify and save Travelers harmless, or otherwise reimburse Travelers for its losses.

40. The Indemnitors have failed to exonerate, indemnify and save Travelers harmless, or otherwise reimburse Travelers for its losses.

41. The Indemnitors failure to exonerate, indemnify and save Travelers harmless, or otherwise reimburse Travelers for its losses constitutes a breach of the Indemnity Agreement for which the Indemnitors are liable.

## COUNT IV

### (Specific Performance)

42. Travelers repeats and incorporates herein by reference the allegations contained in Paragraphs 1 through 41, as if set forth at length here.

43. Pursuant to Travelers' common law rights, as well as its rights set forth in the Indemnity Agreement, the Indemnitors are required to hold Travelers harmless from every claim, loss, damage, demand, liability, cost, charge, suit, judgment, attorney's fee and expense which Travelers incurs in consequence of having issued the Bonds.

44. Pursuant to the Indemnity Agreement, the Indemnitors agreed to pay Travelers, upon demand, an amount sufficient to discharge any claim or demand made against Travelers on any Bond.

45. Travelers is entitled to use such funds to pay claims or hold the funds as collateral security against any loss, claim, liability or unpaid premium on any Bond.

46. The Indemnitors have failed to hold Travelers harmless and have failed to provide Travelers with collateral in violation of the Indemnity Agreement.

## COUNT V

### (Quia Timet/Exoneration)

47. Travelers repeats and incorporates herein by reference the allegations contained in Paragraphs 1 through 46, as if set forth at length here.

48. By reason of the Bonds issued by Travelers at the request and on behalf of the Indemnitors, Travelers, if so adjudged, may be compelled to pay and satisfy claims or demands on the Bonds.

49. Travelers possesses the equitable rights of Quia Timet and Exoneration to demand that the Indemnitors adequately secure or collateralize Travelers prior to any payment by Travelers.

50. Travelers' loss of its equitable rights of Quia Timet and Exoneration constitutes an irreparable harm for which there is no adequate legal remedy.

## COUNT VI

### (Breach of Promissory Note)

51. Travelers repeats and incorporates herein by reference the allegations contained in Paragraphs 1 through 50, as if set forth at length here.

52. Pursuant to the Promissory Note, the Indemnitors promised to pay Travelers an amount equivalent to Travelers' losses associated with the Bonds.

53. The Indemnitors have failed to satisfy their obligations under the Promissory Note.

54. As a result of the Indemnitors breach of the Promissory Note, Travelers is entitled to damages in excess of $24,000,000.00, plus accrued interest and costs of collection, including reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Travelers Casualty and Surety Company of America prays that this Honorable Court enter judgment in its favor and against the Indemnitors, jointly and severally, as follows:

1. By entering an Order requiring the Indemnitors to immediately reimburse Travelers for all incurred losses, plus interest, costs, attorneys' fees and any other incurred expenses;

2. By entering an Order requiring the Indemnitors to immediately pay to Travelers an amount sufficient to discharge any and all claims made against Travelers on any of the Bonds, to be held by Travelers as collateral security against any loss on any of the Bonds;

3. By entering judgment against the Indemnitors for any and all losses sustained by Travelers to date, as well as any amounts that might be adjudged against Travelers, plus interest, costs, attorneys' fees and any other incurred expenses;

4. By entering judgment against the Indemnitors in an amount equivalent to Travelers' total losses, including interest and costs of collection, pursuant to the Promissory Note; and

5. By granting Travelers such other and further relief that the Court deems just and proper.

Respectfully submitted,

**TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,**

By its attorneys,

/s/ Jonathan C. Burwood

Bradford R. Carver, BBO #565396
Jonathan Burwood, BBO #643674
Hinshaw & Culbertson LLP
One International Place, 3rd Floor
Boston, MA 02110
(617) 213-7000

Dated: January 9, 2008